37 So.2d 153

## CAULEY v. STATE.

### 4 Div. 75.

Court of Appeals of Alabama.
Oct. 5, 1948.

E. O. Baldwin and Jas. M. Prestwood, both of Andalusia, for petitioner.

A. A. Carmichael, Atty. Gen., and Jas L. Screws, Asst. Atty. Gen., for the State.

BRICKEN, Presiding Judge.

This court, sitting en banc, has considered and determined the matters involved in this proceeding, which is a petition praying for an order to be directed to the presiding judge of the Fourth Judicial Circuit of Alabama, authorizing such judge to entertain an application or petition for a writ of error coram nobis; the judgment of conviction in the cause having been affirmed by this court.

Willie Cauley, petitioner, was convicted for the offense of murder in the second degree, in the Circuit Court of Covington County, Alabama, on October 30, 1947, and his punishment was fixed at imprisonment for ten years. An appeal was taken to this court and the case was affirmed on 20th day of April 1948, 33 Ala.App. 557, 36 So.2d 347. Rehearing overruled on May 11, 1948; certiorari denied by the Supreme Court June 10, 1948, 251 Ala. 163, 36 So.2d 354.

The province of a proceeding of this character and its broad humane purposes, have been so often stated, and are so well understood, we deem it unnecessary to undertake to make a complete statement of all the facts and circumstances when the writ will lie. Suffice it to say, in the instant proceeding, able and earnest counsel for petitioner, have based their petition upon the grounds as stated in the petition, which is in words and figures as follows:

"Your Movant respectfully shows that said judgment of conviction in said Circuit

Court of Covington County, Alabama was unlawfully and improperly rendered against him in consequence of the following:

"The killing of one Milford Gautney, with which offense Movant is charged, happened October 16, 1947 and Movant was immediately arrested and placed in jail without bond. A special grand jury was convened and indictment was made against Movant on October 22, 1947 charging him with murder in the first degree. He was then arraigned and put to trial on October 29, 1947.

"The killing occurred at a public place and Movant had no opportunity to find out who was present, and who might have been present at the time of the shooting and prior to the shooting. After employment, Movant's attorneys made every effort to find out what the real facts connected with and surrounding the difficulty were and to ascertain who were present at the time and prior to the killing even to the extent of contracting parties in Dothan, Alabama.

"Movant further shows that he did not know until recently, and after this case was affirmed, that Edward C. Henderson, whose affidavit is hereto attached, made a part hereof and marked Exhibit 'A,' was passing the Cafe at the time of the shooting. Movant further alleges that the said Henderson was enroute to his home which was a short distance away, as disclosed in the attached affidavit.

"Movant further shows that the witness Tomlin, who went to Movant's place in the morning part of the day before the killing took place the ensuing midnight or later, testified that the deceased Milford Gautney had no pistol at the time of the shooting and it was not until after affirmance of the conviction by the Court of Appeals that Movant discovered one L. C. Conner, whose affidavit is attached hereto, made a part of this petition and marked Exhibit 'B,' had just driven up to the place of the killing, heard a gun report and saw the deceased and a younger man known to Movant to be the witness Tomlin and that said witness had a pistol in his hand at the time.

"Movant further alleges that L. C. Conner and Edward C. Henderson are truthful and respectable citizens whose testimony a jury would believe and with this testimony together with the other circumstances would assure an acquittal.

"Movant's attorneys in seeking a continuance of the case which was set for trial on such short notice made it known to the Circuit Court that the place of the killing created a difficult case to investigate in that the Cafe was located on a heavily traveled highway with customers parking and leaving all during business hours of the Cafe.

"Your Movant shows that he has a valid and lawful defense against the said judgment and that if given the opportunity can and will make and propound his defense, as may be authorized and allowed by law and the rules of this Honorable Court.

"Wherefore your Movant prays that notice of this petition be given the Attorney General of Alabama as required by law; and that upon a hearing hereof leave be granted your Movant to file his motion in the Circuit Court of Covington County, Alabama for a writ of error coram nobis.

"Your Movant further prays that the judgment of conviction in this case be suspended pending the determination of the merits of this petition and for such additional time as will be reasonable for your Movant to file his motion for the writ of error coram nobis if leave to do so is granted by this Court; and Movant prays for all such other and further relief which to the Court may seem meet and proper.

"Willie Cauley
"Movant."

In support of the alleged facts of the foregoing, the petitioner has filed the affidavits of Edward C. Henderson and L. C. Conner. Said affidavits are as follows:

"State of Alabama
"Covington County

"Before me, the undersigned authority, personally appeared Edward C. Henderson, who being by me first duly sworn deposes and says as follows:

"My name is Edward C. Henderson. I live at Sanford, Alabama. I am 35 years of age. At time of the incident herein testified about, I was employed by C. T. Daniels Lumber Company, at Sanford, Ala-

bama. I live in the house with my Father and Mother at Sanford, Alabama and was living there at the time of the shooting at Pineview where it is said that Willie Cauley shot Milford Gautney.

"I did not know Milford Gautney. I know Willie Cauley casually and became first acquainted with him when he opened Pineview Cafe near Sanford, Alabama. My house is about three-fourths of a mile from Pineview Cafe.

"On the night of the shooting I was returning home, after having been to Opp. I caught a ride most of the way home and was walking toward my home when I heard a noise that sounded like a shotgun report. I was near Pineview Cafe and had intended to stop for a package of cigarettes. I was on the right hand side of the highway, the same side where the Cafe was.

"After the shot I saw two men walk out of the door, the front door, of the Cafe. One was holding or supporting the other and the man doing the supporting had an object in his hand. I did not know what it was. I had come to a stop at that time and looked on for a minute or so.

"The man being supported seemed unsteady on his feet, as though drunk. I did not know either of the men. The unsteady man stood alone while the other opened a car trunk and put something in the trunk. The unsteady man began to slump to the ground but the other fellow closed the trunk of the car, got in the car to drive off but before he pulled off another man, whom I did not know, came from the back side of the Cafe and got into the car also with the man who was ready to leave. Then they drove off toward Opp.

"There were three cars there at the time and I had no idea what was going on but decided not to go in. I then walked on home. The next morning I heard about the shooting and then asked about the time it occurred. I was told that it happened about midnight and then I knew that was the shot I heard as it was about midnight when I walked by. I did not know the men. I did not see the shot fired. I don't know who fired it and I did not know the man who got shot. I do not even know that the man I saw slump to the ground was the man

who got shot. If I had been asked I would have told what I saw and I don't know yet that it is material to the case.

"After I walked on by the Cafe and after the two men drove off toward Opp another car pulled away from the Cafe and passed me. That car went toward Andalusia.

"The trial of Cauley was over before I knew anything about it. I was working in the woods for the lumber company driving a caterpillar tractor, and did not follow the developments of the case.

"Edward C. Henderson
"Edward C. Henderson

"Sworn to and subscribed before me this 9 day of August, 1948.

"Ralph A. Clark
"Notary Public.

"State of Alabama
"Covington County

"Before me, the undersigned authority, personally appeared L. C. Conner who being by me first duly sworn deposes and says:

"My name is L. C. Conner, I live in Andalusia, Alabama at 311 College Street. I am 45 years of age.

"I know Willie Cauley and have known him for several years. I knew Milford Gautney during his lifetime and knew him for about ten years. I worked in Opp while he was living there.

"I remember when the shooting occurred at Pineview. That is, I heard a shot fired on that occasion. I was on my way to Andalusia, after having been to see my Mother at Brundige, Alabama. I left Brundige about 9:30 or 10:00 P.M.

"I knew where Pineview Cafe was and intended to stop there for a sandwich. I had stopped there on previous occasions.

"When I pulled up to the place it was pretty late, around the middle of the night. I cut off the car and started to get out when I heard a shot. I had the door open and had one foot on the ground. After hearing the shot I got back under the steering wheel and closed the door.

"Two men walked from the front door of the Cafe. One was Milford Gautney. I recognized him. I do not know the other man but he appeared to be a younger man than Gautney. Gautney was unsteady on his feet. He appeared to be drunk. The

other fellow was holding him by the arm and had a pistol in his hand. I was only a few feet away and I thought, at first, that Gautney had discharged his pistol while drunk and that he was being put out of the place.

"The other fellow went to a car, about 20 feet from my car, opened the trunk and put the pistol in a cardboard box. He was not watching me. While he went into the trunk of the car Gautney started to sink toward the ground and did finally fall to the ground. The other person I'm speaking of paid no attention to Gautney after he closed the car trunk and then got into the car to drive off when some other fellow came from toward the rear of the Cafe building and got in that car too. They both took off toward Opp and left Gautney lying there, apparently drunk.

"Nobody else came out. Things did not look just right after those men drove off and instead of going in as I had planned, I cranked up and went on to Andalusia. I passed a man walking about a hundred feet from the Cafe. He was going toward Andalusia. I figured he was mixed up in the matter somehow so I said nothing to him.

"The next day I heard about the shooting. I did not see Cauley that night. I know only what I saw from the outside. I got sick a day or two later and was sick for about three weeks. The trial was over before I knew it had started. What I saw is all I know. I don't know what was wrong with Gautney. I don't know who fired the shot.

> "L. C. Conner
> ———————————
> "L. C. Conner

"Sworn to and subscribed before me this 10th day of August, 1948.

> "S. H. Gillis
> ———————————
> "Notary Public"

■ From the foregoing it is apparent the basis for the application to the court for a writ of error coram nobis, is the rule. Viz.: "A writ of error coram nobis issues for the correction of a judgment entered in ignorance of certain matters of fact which if they had been known to the court rendering the judgment would not have been entered."

The function of a writ of error coram nobis is to bring the attention of the court to a specific fact, or facts, then existing but not shown by the record and not known by the court or by the party or counsel at the time of the trial, and being of such a vital nature that if known to the court in time would have prevented the rendition and entry of the judgment assailed.

■ There are certain requirements which must be met before the court will grant the relief here sought, the rule calls for a petition to this court, when the judgment of conviction has been here affirmed, for leave to petition the circuit court where the conviction was obtained, for a writ of error coram nobis to review such judgment, such application should make an adequate showing of the substantiality of the petitioner's claim to the satisfaction of this court; a mere naked allegation that a constitutional, or other legal right has been invaded will not suffice.

■ After a careful attentive consideration of the petition here filed, and of the proof offered in support thereof, we are constrained to hold, and do so hold, that said petition and proof are wholly insufficient to warrant, or justify this court in granting the relief prayed for. We accord to the insistence of the Attorney General, in brief, "that the facts sought to be shown would not have prevented the rendition of the judgment in this case."

Petition denied.